UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| SWEDISH AMERICAN HOSPITAL, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 08-2046 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 4, 13 |
| | : | | |
| KATHLEEN SEBELIUS, in her official capacity as Secretary of the Department of Health and Human Services, *et al.*, | : : : | | |
| | : | | |
| Defendants. | : | | |

MEMORANDUM OPINION

GRANTING IN PART AND DENYING IN PART THE DEFENDANTS'
MOTION TO DISMISS; GRANTING THE PLAINTIFF'S MOTION TO
COMPEL PRODUCTION OF THE ADMINISTRATIVE RECORD

I. INTRODUCTION

This matter comes before the court on the defendants' motion to dismiss and the plaintiff's motion to compel production of the administrative record. On September 30, 2008, the Secretary of the Department of Health and Human Services ("the Secretary") issued an administrative ruling that required the plaintiff, a hospital in Rockford, Illinois, to repay several million dollars to the Medicare program. The plaintiff commenced this action challenging the Secretary's decision under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, and asserting tort claims against Mutual of Omaha ("Mutual"), the insurance company that advised the plaintiff with respect to its Medicare obligations, and Wisconsin Physicians Service Insurance Corporation ("WPS"), the insurance company to which Mutual's Medicare business was transferred in 2007. As discussed in more detail below, because the court lacks subject matter jurisdiction over the plaintiff's tort claims against the insurance companies, it grants in part the defendants' motion to dismiss. The court denies, however, the portion of the defendants'

motion that calls for the dismissal of the plaintiff's APA claim against the Secretary. Finally, the court grants the plaintiff's motion to compel production of the administrative record.

## II.  BACKGROUND

### A.  The Medicare Program

Medicare provides health insurance to the elderly and disabled by entitling eligible beneficiaries to have payment made on their behalf for the care and services rendered by hospitals, termed "providers." *See* 42 U.S.C. §§ 1395 *et seq.* Providers, in turn, are reimbursed by insurance companies, known as "fiscal intermediaries," that have contracted with the Department of Health and Human Services to aid in administering the Medicare program. *See id.* § 1395h. Fiscal intermediaries determine the amount of reimbursement due to providers under the Medicare Act and applicable regulations. *See id.*

Providers that train residents in approved residency programs may be reimbursed for the costs of "graduate medical education" ("GME") and "indirect medical education" ("IME"). *See* 42 U.S.C. § 1395ww. One variable used to calculate the GME and IME costs to be allocated to a provider is the number of full-time equivalent ("FTE") residents in that provider's training program. *See id.* A high GME or IME FTE count yields a correspondingly high GME or IME payment for the provider. *See id.*

Providers obtain Medicare reimbursement by submitting cost reports to their fiscal intermediary demonstrating the costs they incurred during the previous fiscal year and the portion of those costs to be allocated to Medicare. *See* 42 C.F.R. § 413.20. After receiving a provider's cost report, the fiscal intermediary may audit the report before determining the total amount of

reimbursement to which the hospital is entitled, which it then memorializes in a Notice of Program Reimbursement ("NPR"). *See id.* § 405.1803. The fiscal intermediary may reopen and revise a cost report within three years after the date of the NPR. *Id.* § 405.1885.

In the Balanced Budget Act of 1997 ("BBA"), Congress capped the amount that providers could be reimbursed for their GME and IME costs. *See id.* More specifically, for cost reporting periods beginning on or after October 1, 1997, teaching hospitals were limited to the number of GME FTEs and IME FTEs "for the hospital's most recent cost reporting period ending on or before December 31, 1996" for the purpose of calculating GME and IME payments. *See id.* Following the enactment of the BBA, the Secretary promulgated regulations implementing the caps imposed by the statute. *See* 42 C.F.R. §§ 413.86(g)(4), 412.105(f)(1)(iv) (1997). The Secretary subsequently revised the regulations concerning the GME and IME resident caps in 1998, 1999 and 2001. *See* 42 C.F.R. §§ 413.86, 412.105 (1998); 42 C.F.R. §§ 413.86(g)(8) (1999); 42 C.F.R. §§ 413.86(g)(8)(iii), 412.105(f)(1)(ix) (2001).

## B. Factual and Procedural History

The plaintiff is a certified Medicare provider that participates in the Family Practice Residency Program ("the residency program"), which is sponsored by the University of Illinois College of Medicine for the purpose of training residents as family practice physicians. Compl. ¶¶ 12-14. The plaintiff alleges that during fiscal years 1995 and 1996, another hospital, St. Anthony Medical Center ("St. Anthony"), also participated in the residency program. *Id.* ¶¶ 17-18. In 1996, however, St. Anthony withdrew from the program and the plaintiff absorbed the residents that St. Anthony would otherwise have trained. *Id.*

After the plaintiff took on the residents who had previously been trained by St. Anthony, the plaintiff contacted the fiscal intermediary, Mutual, which advised the plaintiff to adjust its GME and IME FTE resident caps upward to reflect the fact that the plaintiff had assumed the residents formerly trained by St. Anthony. *Id.* ¶¶ 18-19. The plaintiff's NPRs for fiscal years 1998 through 2002 were based on FTE resident caps that reflected both the residents trained by the plaintiff and the residents previously trained by St. Anthony. *Id.* ¶ 20.

In February 2005, Mutual reopened the cost reports for fiscal years 1999 through 2002[1] and adjusted the plaintiff's FTE resident caps downward to omit consideration of the residents previously trained by St. Anthony. *Id.* ¶¶ 21-22. Likewise, Mutual omitted consideration of St. Anthony's residents in the NPR that it issued for fiscal year 2003. *Id.* ¶ 23. After the plaintiff appealed Mutual's determination to the Provider Reimbursement Review Board, the Secretary issued a ruling affirming Mutual's adjustments on September 30, 2008. *Id.* ¶ 25. This determination resulted in Medicare recouping nearly $5 million from the plaintiff. *Id.*

The plaintiff commenced the instant action in this court in November 2008 alleging that the Secretary's decision violated the APA and asserting estoppel and other tort claims against Mutual and WPS. *See generally id.* On April 9, 2009, the defendants filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for

---

[1] As the NPR for fiscal year 1998 was issued in February 2000, *see* Compl. ¶ 37, the three-year limitation period on reopening a cost report had passed by the time Mutual issued the Notices of Reopening in February 2005, *see id.* ¶ 21.

failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[2] *See generally* Defs.' Mot. to Dismiss ("Defs.' Mot."). In response, the plaintiff filed a motion to compel production of the administrative record, *see generally* Pl.'s Mot. for Turnover of the Admin. R. ("Pl.'s Mot."), as well as an opposition to the defendants' motion to dismiss, *see generally* Pl.'s Opp'n to Defs.' Mot. ("Pl.'s Opp'n"). With both motions fully briefed, the court turns now to the applicable legal standards and the parties' arguments.

### III. ANALYSIS

#### A. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art[icle] III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the

---

[2] The defendants also moved to dismiss the plaintiff's claims against Mutual for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5), *see* Defs.' Mot. to Dismiss ("Defs.' Mot.") at 25, but later withdrew that motion, *see* Defs.' Reply in Support of Mot. to Dismiss at 17 n.14.

burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). When necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### B. Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his

prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-56, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 40 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

### C. The Court Grants in Part and Denies in Part the Defendants' Motion to Dismiss and Grants the Plaintiff's Motion to Compel Production of the Administrative Record

### 1. The Court Grants the Defendants' Motion to Dismiss the Plaintiff's Tort Claims Against Mutual and WPS Based on Lack of Subject Matter Jurisdiction

This Circuit has noted that courts should resolve Rule 12(b)(1) jurisdictional challenges before considering Rule 12(b)(6) challenges. *United States ex rel. Settlemire v. District of Columbia*, 198 F.3d 913, 920 (D.C. Cir. 1999) (citing *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155-56 (2d Cir. 1993)). Put simply, "if [the court] must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Kreindler & Kreindler*, 985 F.2d at 1155-56 (citing 5 FED. PRAC. & PROC. § 1350). Accordingly, the court will first address the defendants' argument that the court lacks subject matter jurisdiction over the plaintiff's tort claims against Mutual and WPS. *See* Defs.' Mot. at 17-20.

The defendants argue that 42 U.S.C. § 405(h), as construed in unambiguous Supreme Court precedent, makes clear that the Medicare Act provides no remedy for an aggrieved hospital beyond the recovery, through the administrative process set forth in the Act, of the Medicare reimbursement to which the hospital is entitled. *Id.* at 17-18. Thus, the defendants argue, the court's jurisdiction extends only to the plaintiffs' APA claim against the Secretary and does not encompass a tort action against Mutual and WPS for additional money damages arising out of the Secretary's denial of the plaintiff's request for reimbursement. *Id.* at 18-20. In addition, the defendants contend that because Mutual and WPS were acting as agents of the federal government in committing the conduct in question, the claims asserted against them as fiscal

intermediaries are effectively suits against the United States government, which is immune from the plaintiff's tort claims. *Id.* at 20.

The plaintiff takes issue with the defendants' suggestion that it is seeking "additional" funds, pointing out that it seeks only the Medicare reimbursement to which it claims it is entitled by virtue of having trained St. Anthony's former residents, rather than any "additional" money. Pl.'s Opp'n at 18. The plaintiff also draws factual distinctions between this case and the three principal cases upon which the defendants rely – *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000), *Schweiker v. Chilicky*, 487 U.S. 412 (1988), and *Heckler v. Ringer*, 466 U.S. 602 (1984) – by pointing out that the plaintiffs in *Schweiker* sought money damages against the federal government for alleged constitutional violations, and that the plaintiffs in *Illinois Council on Long Term Care* and *Ringer* failed to exhaust their administrative remedies and asserted federal question jurisdiction pursuant to 28 U.S.C. § 1331. Pl.'s Opp'n at 18. Here, in contrast, whether the plaintiff exhausted its administrative remedies is not in dispute, and the plaintiff "is not trying to invoke jurisdiction under federal question jurisdiction." *Id.* at 18-19. In short, the plaintiff maintains that it "is only seeking review of the [Provider Reimbursement Review Board's] decision and recovery of the amount of reimbursement based on its educating and training all the Program residents after St. Anthony discontinued its involvement in the residency program." *Id.* at 19.

Pursuant to 42 U.S.C. § 405(h), as applied to the Medicare program by 42 U.S.C. § 1395ii,

> [n]o findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the [Secretary], or any officer or employee thereof shall be brought

under section 1331 [(authorizing federal question jurisdiction)] or 1346 [(authorizing federal defendant jurisdiction)] of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. §§ 405(h), *see also id.* § 1395ii. Thus, the plaintiff's tort claims against Mutual and WPS are barred if those fiscal intermediaries are "officer[s] or employee[s]" of the United States or the Secretary and if the plaintiff's tort claims "aris[e] under" the Medicare Act. The court will consider each of these questions in turn.

First, the regulations interpreting the Medicare Act state that fiscal "[i]ntermediaries and carriers[3] act on behalf of [the Department of Health and Human Services] in carrying out certain administrative responsibilities that the law imposes." 42 C.F.R. § 421.5(b). Several other Circuits have concluded that fiscal intermediaries serve as "officer[s] or employee[s]" of the United States and therefore fall under the scope of § 405(h). *See United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 510-11 (4th Cir. 1999) (observing that "[n]ot only are [carriers] given a clear duty to perform official acts in administering the program, they are actually considered 'officers or employees' of the United States within the meaning of the Medicare Act" (citing *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449 (1999)); *Midland Psychiatric Assocs., Inc. v. United States*, 145 F.3d 1000, 1003-04 (8th Cir. 1998) (concluding that fiscal intermediaries and carriers "are government agents . . . [because] [u]nder contract with the Secretary of Health and Human Services, they do the work of the Government on the Secretary's behalf") (internal citations omitted); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 487-88 (7th Cir. 1990) (holding that fiscal intermediaries serve as

---

3   Carriers are comparable to fiscal intermediaries. *See United States ex rel. Rahman v. Oncology Assocs., P.C.*, 198 F.3d 502, 510 n.1 (4th Cir. 1999).

"officer[s] or employee[s]" of the United States).  In addition, this Circuit has held that fiscal intermediaries serve as agents of the United States.  *See Pine View Gardens, Inc. v. Mutual of Omaha Ins. Co.*, 485 F.2d 1073, 1075 (D.C. Cir. 1973) (noting that the fiscal intermediary was "an agent for the government as a disclosed principal").  Thus, the court concludes that Mutual and WPS are "officer[s] or employee[s]" of the government of the purposes of § 405(h).

Second, a claim "aris[es] under" the Medicare Act for purposes of § 405(h) if it is "inextricably intertwined" with a claim for benefits, *Ringer*, 466 U.S. at 614-15, regardless of whether the claim is brought under federal question jurisdiction,[4] *see Bodimetric Health Servs., Inc.*, 903 F.2d at 487 (holding that "[a] party cannot avoid the Medicare Act's jurisdictional bar simply by styling its attack as a claim for collateral damages instead of a challenge to the underlying denial of benefits" because "[i]f litigants who have been denied benefits could routinely obtain judicial review of these decisions by recharacterizing their claims under state . . . causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely undermined").  Under this standard, the plaintiff's tort claims against Mutual and WPS plainly "aris[e] under" the Medicare Act.  *See Ringer*, 466 U.S. at 614 (noting that "at bottom, [the plaintiffs' constitutional and statutory claims amounted to] a claim that they should be paid" Medicare reimbursements).  Indeed, the plaintiff in this case appears to concede that its claims "arise under" the Medicare Act.  *See* Compl. ¶ 5 (stating that this "action arises out

---

[4]   The court notes that, contrary to the plaintiff's assertion that it "is not trying to invoke jurisdiction under federal question jurisdiction," Pl.'s Opp'n at 18-19, the plaintiff in fact states in the complaint that "jurisdiction is based on 28 U.S.C. § 1331 [(governing federal question jurisdiction)], 42 U.S.C. § 1395oo [(governing judicial review of decisions of the Provider Reimbursement Review Board)] and 5 U.S.C. § 702 [(governing judicial review of agency decisions under the Administrative Procedure Act)] because the action arises out of a final agency action of the United States Department of Health and Human Services," Compl. ¶ 5.

of a final agency action of the United States Department of Health and Human Services"). Thus, § 405(h) divests the court of subject matter jurisdiction over the plaintiff's tort claims against Mutual and WPS.[5] *Cf. In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008) (observing, in the context of the Exchange Act, that "rather than allowing plaintiffs to sue under common law theories, Congress created a self-contained process to review and remedy such complaints").

### 2. The Court Denies the Defendants' Motion to Dismiss the Plaintiff's APA Claim Against the Secretary and Grants the Plaintiff's Motion to Compel Production of the Administrative Record

The court turns next to the defendants' motion to dismiss the plaintiff's APA claim against the Secretary. The defendants maintain that the Secretary properly concluded that St. Anthony's resident caps could not be added to the plaintiff's resident caps in calculating the reimbursement due to the plaintiff. Defs.' Mot. at 11-17. More specifically, the defendants contend that the Secretary's decision must be given broad deference, *id.* at 11-12, and that under this deferential standard of review the decision was reasonable, *id.* at 12-15. The defendants also assert that to the extent the plaintiff argues that it may estop the government based on the advice given to it by Mutual, the court must reject this argument as a matter of law. *Id.* at 15-17.

The plaintiff counters that the Secretary's decision was arbitrary and capricious and therefore must be overturned under the APA. Pl.'s Opp'n at 7-12. It first disputes the defendants' contention that the court should afford broad deference to the decision, asserting instead that the Secretary's conflicting interpretations of the relevant statutory provisions in

---

[5] As a result, the court need not reach the defendants' alternative argument that Mutual and WPS are immune from the plaintiff's tort claims. *See* Defs.' Mot. at 20-23.

1997, 1998, 2001 and 2002 diminish the degree of deference to which the Secretary's decision is entitled. *Id.* at 7-8. In addition, the plaintiff argues that the Secretary's decision conflicted with Congress's intent. *Id.* at 8-10. Finally, the plaintiff disputes the defendants' assertion that the plaintiff cannot assert equitable estoppel against the government, arguing that the court should entertain the plaintiff's estoppel argument against the government and the fiscal intermediaries in light of the unique facts of this case. *Id.* at 10-18.

After the defendants filed their motion to dismiss, the plaintiff filed a motion to compel production of the administrative record, arguing that it should be permitted to cite to the administrative record in preparing its opposition to the defendants' motion to dismiss. *See generally* Pl.'s Mot.[6] In their opposition to the plaintiff's motion, the defendants note that they purposefully did not cite to the administrative record in their motion to dismiss and argue that "all of Plaintiff's claims should be dismissed as a matter of law based on the face of the Complaint, and without reference to extraneous evidence." Defs.' Opp'n at 3. In other words, the defendants assert, "[t]he Court does not need the administrative record to resolve [the issues raised in the defendant's motion to dismiss] and, therefore, the Secretary has not yet produced it." *Id.* at 2.

With respect to the defendants' motion to dismiss the plaintiff's tort claims against the fiscal intermediaries, the defendants are correct that the court can – and should – resolve the

---

[6]  Despite the fact that the plaintiff asserted that it "ha[d] the right to cite to the Administrative Record in preparing its response to" the defendants' motion to dismiss, Pl.'s Mot. ¶ 24, two weeks after filing its motion to compel production of the administrative record – before the court issued a ruling on the motion – the plaintiff filed an opposition to the defendants' motion to dismiss, *see generally* Pl.'s Opp'n. The plaintiff did not request that the court permit it to file an opposition to the defendants' motion to dismiss after the court ruled on the plaintiff's motion to compel production of the administrative record.

jurisdictional issues raised in the motion to dismiss at the earliest possible stage. *See, e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (noting "[t]he requirement that jurisdiction be established as a threshold matter"). As discussed in Part III.B.1 *supra*, the court has determined that it lacks subject matter jurisdiction over the plaintiff's tort claims against the fiscal intermediaries without reference to the administrative record.

The same cannot be said, however, of the court's consideration of the defendants' motion to dismiss the plaintiff's APA claims against the Secretary. For, although the arguments raised in the defendants' motion to dismiss are compelling, the court's task is not simply to determine whether the Secretary reached the correct result in denying the plaintiff's request for reimbursement. Rather, the court must assess whether the Secretary "examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Md. Pharm., Inc. v. Drug Enforcement Admin.*, 133 F.3d 8, 16 (D.C. Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). "The requirement that agency action not be arbitrary and capricious includes a requirement that the agency adequately explain its result." *Appleby v. Harvey*, 517 F. Supp. 2d 253, 260 (D.D.C. 2007) (quoting *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995)). "The arbitrary and capricious standard . . . 'mandat[es] that an agency . . . provide an explanation that will enable the court to evaluate the agency's rationale at the time of decision.'" *Id.* (citing *Dickson*, 68 F.3d at 1404). Without the administrative record, the court is unable to perform this function. *Cf. Shays v. Fed. Election Comm'n*, 414 F.3d 76, 97-100 (D.C. Cir. 2005) (concluding, based on the administrative record, that the agency had given no rational justification for its determination and the determination was therefore arbitrary and capricious).

For this reason, the defendants' reliance on *American Bankers Association v. National Credit Union Administration*, 271 F.3d 262 (D.C. Cir. 2001) is misplaced. In *American Bankers Association*, the Circuit concluded that the trial court did not err by not directing the National Credit Union Administration ("the NCUA") to produce the administrative record because the plaintiff's challenge to the NCUA's rule "depend[ed] entirely on the argument that the rule itself violate[d] the statute." *Id.* at 267. The Circuit relied on the analogous case of *Sierra Club v. United States Fish & Wildlife Service*, 245 F.3d 434 (5th Cir. 2001), in which the Fifth Circuit concluded that production of the administrative record was not necessary because the Circuit's "review [was] limited to interpreting the extent to which the regulation [was] consistent with the statute." *Id.* at 440 n.37. Here, in contrast, viewing the complaint in the light most favorable to the plaintiff, the plaintiff is challenging not just whether the Secretary's regulations were consistent with the statute, but also whether the Secretary's adjudicatory process was reasonable and whether the decision was consistent with Congressional intent. *See* Compl. ¶¶ 81-85. In other words, the plaintiff is challenging not only the administrative decision, but also the process that led to that decision. The court is unable to assess the merits of these arguments without considering the administrative record. *See Md. Pharm., Inc. v. Drug Enforcement Admin.*, 133 F.3d 8, 16 (D.C. Cir. 1998) (directing the court to determine whether the agency "examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made"); *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (directing the court to assess the agency's explanation for its determination). As a result, the court denies the defendants' motion to dismiss the plaintiffs' APA claim and grants the plaintiff's motion to compel production of the administrative record.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendants' motion to dismiss and grants the plaintiff's motion to compel production of the administrative record.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 5th day of March, 2010.

RICARDO M. URBINA
United States District Judge